United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 95-3864

_____

Reginald L. Powell,                        *
                                           *
          Appellant,                       *
                                           *   Appeal from the United States
     v.          *                         District Court for the Eastern
                                           *   District of Missouri.
Michael S. Bowersox,                       *
                                           *
          Appellee. *

_____

Submitted: November 18, 1996

Filed: May 1, 1997

_____

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS
     SHEPPARD ARNOLD, Circuit Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     Reginald Powell, a Missouri inmate convicted of two counts of first-
degree murder and sentenced to death on both counts, appeals from the
district court's[1] denial of his petition under 28 U.S.C. § 2254.   We
affirm.

I.

     On November 14, 1986, Mr. Powell unexpectedly encountered Calvin
Courtney, his stepbrother.  Upon recognizing Mr. Courtney,

_____

[1]The Honorable Donald J. Stohr, United States District Judge
for the Eastern District of Missouri.

Mr. Powell said, "Oh, I didn't know who it was, because we were getting ready to rob you," and "Man, I have been around all day robbing people." Accompanying Mr. Courtney were brothers Freddie and Lee Miller, who earlier that evening had refused to purchase liquor for Mr. Powell. An argument ensued, and Mr. Powell pushed the Millers to the ground and kicked each of them in the groin, chest, and face. Mr. Powell yanked down one of the brothers' pants and undergarments and kicked him repeatedly in the genitals. When Mr. Courtney attempted to stop the beating, Mr. Powell responded, "My baby needs some Pampers" and resumed his pummeling. Pleading for his life, Lee Miller said, "You can beat me all you want, but don't kill me."

Mr. Powell jumped repeatedly on the Millers' chests, breaking all but their top ribs. He then examined the Millers for valuable items, pulling down Lee Miller's pants while doing so. While the Millers were still alive, Mr. Powell thrust a knife three times into each one's abdomen and chest to a depth of five or six inches. They died from stab-induced bleeding. Shortly thereafter, Mr. Powell commented to some companions that he had "stabbed" and "stuck" the Millers. "Don't bring no knife if you ain't going to use it," he added. He had blood on his shoes and was carrying the bloody knife. Later, in a tape-recorded statement to the police, Mr. Powell confessed to the murders and exclaimed, "You know, we'll say I had the last -- the last laugh."

A Missouri jury convicted Mr. Powell on two counts of first-degree murder. After the jury was unable to agree on a sentence, the trial court sentenced Mr. Powell to death on both counts and later denied his motion for a new trial. A second judge subsequently denied his motion for post-conviction relief. The Missouri Supreme Court affirmed the conviction, death sentence, and

-2-

denial of post-conviction relief. *See State v. Powell*, 798 S.W.2d 709 (Mo. 1990) (*en banc*), *cert. denied*, 501 U.S. 1259 (1991). In *Powell v. Bowersox*, 895 F. Supp. 1298 (E.D. Mo. 1995), the district court denied Mr. Powell's request for a hearing and denied all claims for relief asserted in his petition for writ of habeas corpus. The district court later also denied Mr. Powell's motion to amend the judgment under Fed. R. Civ. P. 59(e). Mr. Powell appeals.

## II.

Mr. Powell claims first that his trial counsel violated his constitutional right to effective assistance of counsel in a number of ways. He complains that in the trial's sentencing stage counsel did not inquire whether he desired to testify, that in neither the guilt-determination stage nor the sentencing stage of the trial did counsel inform him that he could testify, that in neither stage did counsel advise him to testify, that in both stages counsel decided unilaterally that he would not testify, that in neither stage did counsel inform him that he had the unilateral right to decide whether he would testify, that in neither stage did counsel discuss with him what form his testimony might take, and that in neither stage did counsel discuss with him the possible "ramifications" of any testimony that he might offer. Since Mr. Powell did not assert the last two of these claims at the district court level, we will not address them. *See*, *e.g.*, *Sutton v. Settle*, 302 F.2d 286, 288 (8th Cir. 1962) (*per curiam*), *cert. denied*, 372 U.S. 930 (1963).

A claim of ineffective assistance of counsel involves two showings: First, the petitioner must demonstrate that his or her counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms of competence, and, second, he or she must establish a reasonable

probability that but for counsel's unprofessional errors the outcome of the trial would have been more favorable. A failure to make either showing makes further scrutiny unnecessary. *See*, *e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 697 (1984).

Our inquiry focuses first on the trial's guilt-determination stage, where Mr. Powell argues that counsel should have advised him that he could testify, that counsel should have instructed him to testify, that counsel should not have decided unilaterally that he would not testify, and that counsel should have advised him that he could testify even if counsel did not want him to do so. Mr. Powell says that had he been properly advised, he would have taken the stand and would have discussed his PCP and alcohol usage and the effects that these had on him. He believes that his testimony would have aided his defense of diminished capacity. We disagree.

The jury heard testimony from other witnesses concerning Mr. Powell's state of intoxication and the effect that intoxication could have on one who suffers from Mr. Powell's mental deficiencies. Trial counsel did not believe that Mr. Powell's testimony would add enough favorable information to offset the harm that his taking the stand would do to his defense of diminished capacity. Trial counsel believed that Mr. Powell's competency had improved measurably since the murder, and she feared that he would appear far more competent on the stand than the expert witnesses said he was when he committed the murders.

Counsel's fears were not unfounded. The bulk of the trial testimony indicated that Mr. Powell's mental capacities had improved. His testimony could very well have damaged his defense in the manner that trial counsel feared. Further, had he

-4-

testified, Mr. Powell would have been subject to cross-examination on all of the grisly details of the double murder, including the matters contained in his taped confession. It is clear from these considerations that there is no reasonable probability that Mr. Powell's testimony would have produced a different result in his trial. He therefore has failed to demonstrate that he was prejudiced by his counsel's alleged shortcomings.

Regarding the penalty phase of his trial, Mr. Powell argues that counsel should have informed him that he could testify, that counsel should have inquired if he desired to testify, that counsel should have affirmatively advised him to testify, that counsel should not have unilaterally decided that he would not testify, and that counsel should have told him that he had the right to decide unilaterally to testify. Had he been given such advice, Mr. Powell maintains, he would have taken the stand and expressed remorse, pleaded for the jury to spare his life, spoken about the circumstances surrounding the murders, discussed his childhood, and generally humanized himself before the jury.

As in the guilt-determination stage, however, had he testified he would have faced a cross-examination in which he most likely would have been forced to discuss every aspect of the double murder, leaving a fresh imprint of the horrific acts that he committed on the minds of the jurors. He also would likely have had to confront his own taped confession, where he stated, as we have already noted, "You know, we'll say I had the last -- the last laugh." Further, during the state post-conviction relief hearing, Mr. Powell's counsel exerted more effort than one would hope necessary to extract a statement of remorse from Mr. Powell. A similar difficulty at the penalty stage would have been extremely harmful to Mr. Powell. He has thus failed to demonstrate that trial counsel's actions resulted in prejudice to him.

Given the concerns discussed above and the fact that Mr. Powell's motion for state post-conviction relief contained approximately 100 points and subpoints, along with his charges of ineffective assistance of counsel, we believe that had Mr. Powell's counsel acted as he now maintains she should have and had he testified, he would now be asserting that counsel was ineffective for advising him to take the stand. *See*, *e.g.*, *Payne v. United States*, 78 F.3d 343, 346 (8th Cir. 1996); *see also Nazarenus v. United States*, 69 F.3d 1391, 1397 (8th Cir. 1995) (petitioner asserted that his lawyer was ineffective for advising him to testify, thereby subjecting him to harmful cross-examination). For the reasons discussed above, then, we conclude that counsel rendered effective assistance at trial.

## III.

Mr. Powell also draws our attention to an instruction that the trial court declined to submit to the jury. He asserts that during the trial's penalty phase the trial court should have instructed the jury to consider in mitigation whether "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." The instruction's absence, Mr. Powell argues, precluded the jury from considering relevant evidence and consequently violated rights guaranteed to him by the Eighth and Fourteenth Amendments.

Those amendments require that the sentencer in a capital case be allowed to weigh in mitigation any feature of a defendant's character or record and any circumstances of the offense that the defendant presents in support of a sentence less than death. *See*, *e.g.*, *Eddings v. Oklahoma*, 455 U.S. 104, 110, 112 (1982); *see also Johnson v. Texas,* 509 U.S. 350, 361 (1993). According to

-6-

Mr. Powell, the evidence showed him to be borderline mentally retarded, and demonstrated that he had consumed large amounts of alcohol before the attack, had a diminished ability "coolly [to] reflect" or deliberate on his actions, and suffered substantial impairment to his judgment, reasoning, and decision-making skills.

Two of the instructions that the trial court gave in this case stated that in determining whether any mitigating circumstance existed the jury could "consider all of the evidence" and "any circumstances which you find from the evidence in mitigation of punishment." Two other instructions, moreover, indicated to the jury that it had to "consider all the circumstances in deciding whether to assess and declare the punishment at death." In *Battle v. Delo*, 19 F.3d 1547, 1558-60 (8th Cir. 1994), *aff'd*, 64 F.3d 347 (8th Cir. 1995), *cert. denied*, 116 S. Ct. 1881 (1996), we dealt with an argument similar to the one that Mr. Powell advances here. Although in *Battle* the trial court instructed the jury only that it could "consider all of the evidence," coupled with a general instruction to consider the circumstances of the offense, our court nevertheless concluded that the instructions passed constitutional muster because they included "generalized language allowing consideration of evidence not specifically enumerated." *Id.* at 1560. The instructions in this case go considerably beyond those approved in *Battle* in explaining to the jury that it is not restricted with regard to the kinds of matters that it may consider in mitigation.

Evidence relevant to Mr. Powell's mental state was presented over the course of several days. The instructions authorized the jury to weigh all of the evidence presented during that time, including the evidence that Mr. Powell complains was precluded from consideration. Although the charge did not include the instruction

at issue, the trial court did direct the jury to consider the totality of the evidence. We conclude that the charge did not preclude the jury from considering any mitigatory evidence and therefore that it was constitutional.

## IV.

Finally, Mr. Powell objects to the presence of the word "unanimously" in two jury instructions, both of which stated in relevant part: "If you *unanimously* find that one or more mitigating circumstances exist[s] sufficient to outweigh the aggravating circumstances found by you to exist, then ... you must return a verdict fixing defendant's punishment at imprisonment for life" (emphasis supplied). Mr. Powell asserts that, as in *Mills v. Maryland*, 486 U.S. 367, 371, 380, 384 (1988), there exists a substantial probability that a reasonable juror would think that he or she could not weigh a particular mitigating circumstance against aggravating factors unless the jurors first unanimously agreed that that particular circumstance existed.

The Eighth and Fourteenth Amendments, as we have already said, require that in capital cases an individual juror be allowed to consider in mitigation any aspect of the defendant's character or record and any circumstances of the offense offered by the defendant for purposes of mitigation. Because of the finality of an executed death sentence and the unavailability of the modifications to that sentence that are available in noncapital sentences, a juror must be permitted to consider every available detail in mitigation. *See*, *e.g.*, *Eddings*, 455 U.S. at 110, 112-16. Mr. Powell argues that, as in *Mills*, 486 U.S. at 371, 380, 384, there exists the possibility that a single juror could have blocked the weighing of mitigating evidence in violation of the Constitution.

The *Mills* decision, it is true, turns on the presence of the word "unanimously" in a verdict form, and, in the particular circumstances of that case, the Supreme Court found that there existed a substantial probability that reasonable jurors would think that they could not weigh a mitigating circumstance against aggravating factors unless the entire jury first agreed on the existence of that circumstance. *Id.* But the instructions in this case do not exhibit such an infirmity. The challenged instructions deal with balancing mitigating circumstances against aggravating factors, not with determining what mitigating circumstances exist. These instructions are, in fact, the same in every relevant respect as the instructions that our court upheld in *Battle*, 19 F.3d at 1561-62, and in *Griffin v. Delo*, 33 F.3d 895, 905-06 (8th Cir. 1994), *cert. denied*, 115 S. Ct. 1981 (1995). We concluded in those cases that the petitioner had failed to demonstrate a substantial probability that a reasonable juror could have interpreted the word "unanimously" in such a way as to bestow upon each member of the jury an unconstitutional veto power over the consideration of mitigating evidence. We reach the same conclusion in this case.

V.

For the reasons discussed, we affirm the district court's judgment.


A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-