Hilda M. BROWN, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CIV. 97–1259(CCC).
No. CR. 93–367(CCC).

United States District Court,
D. Puerto Rico.

Dec. 18, 1998.

**124**

Hilda M. Brown, pro se, for Petitioner.

Guillermo Gil, U.S. Attorney, Aixa Maldonado–Quiñones, Assist. U.S. Attorney, for Respondent.

### OPINION AND ORDER

CEREZO, Chief Judge.

*Pertinent Procedural Background*

On November 24, 1993, a 32–count indictment was returned charging pro se petitioner Hilda M. Brown with aiding and abetting in a conspiracy to execute a scheme to defraud—obtaining money and property by means of false and fraudulent pretenses—utilizing the United States Postal Service, wire communication, and financial transactions in the course of said scheme to defraud, all in violation of 18 U.S.C. §§ 2, 371, 1341, 1343, and 1956. (Docket No. 2).

Plea negotiations between the parties culminated in a Plea Agreement. (Docket Nos. 42, 49). On July 1, 1994, after a change of plea hearing, a plea of guilty as to Counts Seven, Eight, Sixteen, Seventeen, and Twenty–Seven of the Indictment was entered on petitioner's behalf. (Docket No. 53). Thereafter, on December 6, 1994, petitioner was sentenced to serve concurrent terms of fifty-seven (57) months of imprisonment and three (3) years of supervised release as to Counts Seven, Eight, Sixteen, Seventeen, and Twenty–Seven of the Indictment, judgment being entered accordingly. Payment of a special monetary assessment of $50.00 as to each count of conviction, for a total of $250.00, and $200,000 in restitution were also imposed. A fine was not imposed. (Docket Nos. 66–67). Pursuant to the plea agreement between the parties, the remaining counts of the Indictment were dismissed.

On December 16, 1994, petitioner filed timely notice of intent to appeal. (Docket No. 69). Her conviction and sentence were eventually affirmed by the Circuit Court of Appeals in an unpublished opinion. (Docket No. 89). *United States v. Brown,* 101 F.3d 106 (1st Cir.1996).

Petitioner has now moved for collateral relief pursuant to 28 U.S.C. § 2255. (Docket No. 94). *Brown v. United States,* 42 F.Supp.2d 122 (D.Puerto Rico 1998).

*Petitioner's Section 2255 Motion*

In her 2255 motion, petitioner requests relief from her judgment of conviction and sentence on grounds of ineffective assistance of counsel at sentencing, alleging that:

● Counsel did not allow petitioner to testify at sentencing on her own behalf, despite her express desire to do so;

● Counsel failed to argue in favor of a three-level downward adjustment for ac-

ceptance of responsibility, instead of the two-level adjustment petitioner that was applied;

● Counsel failed to object to the supervisory role upward adjustment;

● Counsel failed to object to the United States' failure to file a motion for downward departure pursuant to U.S.S.G. § 5K1, in breach of the Plea Agreement;

● Counsel failed to object to petitioner's being sentenced at the top of the applicable guideline sentencing range absent requisite specific findings.

The United States has opposed petitioner's 2255 motion. (Civil Docket No. 8). We discuss the allegation *seriatim.*

— I —

*Counsel's Refusal to Allow Petitioner to Testify at Sentencing*

■ At the downward departure portion of the sentencing hearing, held on December 6, 1994 (Docket Nos. 64, 84), counsel announced that "we decided that [petitioner] will not be taking the stand." (Docket No. 84 at 80–81). This decision was restated after the Court advised counsel that "[s]he either testifies under oath or she does not. If she is going to declare it has to be under oath. You make the decision. It's your call and it's your client's position if she is going it (sic) take the stand whether it be for one question or one-hundred questions." (Docket No. 84 at 81).

In denying petitioner's request for a downward departure the Court's sentencing findings made reference to the fact that petitioner "would not even allow the court to assess her credibility and her alleged good intentions by observing her demeanor on the witness stand. She would have us believe, solely through her daughter's testimony, that taking care of her parents when they needed it has been her life long desire and that this is the moment when they need per (sic), precisely at the time that she faces incarceration." (Docket No. 82 at 12).

On direct appeal petitioner assigned error to the Court's consideration of her refusal to take the stand at sentencing as a breach of her Fifth Amendment right not to incriminate herself. The Circuit Court findings that petitioner's "decision not to testify at the hearing cannot properly be construed as an exercise of her Fifth Amendment privilege against self-incrimination" is the law of this case. (Docket No. 89 at 2–3). Petitioner now presents the same issue with a different twist: although the Court did not err, as found by the First Circuit, counsel's legal assistance in this regard was constitutionally defective under the Sixth Amendment because his intent was to unilaterally safeguard her from incriminating herself, ignorant that the Fifth Amendment was not implicated, against her wishes.

Defendant's silence in the aftermath of counsel's alleged misrepresentation is notable. On December 9, 1994, when defendant addressed the Court at the beginning of the sentencing hearing, upon the Court's inquiry, petitioner acknowledged being well informed by her attorney as to the Pre–Sentence Investigation Report and as to the fact that she saw no reason to postpone sentencing. (Docket No. 84 at 3). Petitioner also personally addressed the Court in mitigation of sentence as to her repentance, shame, and the impact of her wrongdoing upon her children and parents. (Docket No. 84 at 5–6).

We agree with respondent's view that petitioner's allegation that counsel's decision was "ill informed, carried out in direct conflict with [her] wishes and directions and severely detrimental to the outcome of the hearing" is conclusory. Even if petitioner's counsel advised her not to testify, the record does not support the proposition that he forbade her from doing so.

A claim of ineffective assistance of counsel involves two showings: First, the petitioner must demonstrate that his or her counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional

norms of competence, and, second, he or she must establish a reasonable probability that but for counsel's unprofessional errors the outcome of the [proceeding] would have been more favorable. A failure to make either showing makes further scrutiny unnecessary.

*Powell v. Bowersox*, 112 F.3d 966, 968 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 708, 139 L.Ed.2d 650 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In other words, petitioner must show more than deficient performance by counsel, she must show that the deficient performance was prejudicial. Petitioner's arguments fall short of meeting this burden as her arguments do not support the conclusion that her would-be testimony at the downward departure portion of the sentencing hearing would have made a difference in the Court's decision not to depart pursuant to U.S.S.G. § 5H1.6. On the contrary, petitioner's representations in mitigation of sentence as to her repentance, shame, and the impact of her wrongdoing upon her children and parents (Docket No. 84 at 5–6) indicate that her testimony at the downward departure portion of the sentencing hearing would have been cumulative.

Counsel's actions, if anything, attest to his over-zealousness in his representation of the petitioner. As stated before, the decision that petitioner would not testify was restated by counsel after the Court advised counsel that "[s]he either testifies under oath or she does not. If she is going to declare it has to be under oath. You make the decision. It's your call and it's your client's position if she is going it (sic) take the stand whether it be for one question or one-hundred questions." (Docket No. 84 at 81).

■ In our *Strickland* analysis we are deferential to counsel's genuine preoccupation with protecting the petitioner from being subject to cross-examination which could affect sentencing or perhaps even disclose her involvement in uncharged conduct or subject her to prosecution for other crimes. After all, although "the privilege against self-incrimination is not implicated by testimony affecting the level of sentence," *United States v. Mitchell*, 122 F.3d 185, 191 (3rd Cir.1997), *petition for cert. filed* (Jan. 13, 1998) (No. 97–7541), "an unsentenced defendant who has pled guilty retains a legitimate protectable Fifth Amendment interest as to matters that could affect his sentence." *United States v. Montilla–Rivera*, 115 F.3d 1060, 1065 (1st Cir.1997), citing *United States v. De La Cruz*, 996 F.2d 1307, 1312 (1st Cir.), *cert. denied*, 510 U.S. 936, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993) (upholding district court's decision not to compel testimony of unsentenced witness convicted under guilty plea at codefendant's sentence pursuant).

The situation at bar illustrates why the Court must afford hind-sight deference to counsel's strategy choices as it seems that, as in *Powell*, 112 F.3d at 969, had counsel acted as petitioner would now have him, she would now be asserting that counsel was ineffective for allowing her to take the stand.

— II —

*Counsel's Failure to Argue for a Three-level Downward Adjustment for Acceptance of Responsibility*

■ A 2–level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) was applied to petitioner's base offense level. (Docket No. 82 at 8). Petitioner argues that the adjustment should have been for three levels pursuant to U.S.S.G. § 3E1.1(b). The United States characterizes the application of the 2–level downward adjustment as a "miscalculation" (Docket No. 8 at 25) and submits that any objection thereto was waived by the defendant's failure to timely object thereto and raise the error on direct appeal. The United States also suggests that the claim is an "ordinary error" brought under the guise of ineffective as-

sistance of counsel in an attempt to have Section 2255 do service for an appeal.

■ These submissions, however, hardly dispose of the issue but suggest that the additional level "miscalculation" claim was forfeited by counsel on direct appeal.

'Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal. Consequently, a defendant may not raise claims that were not presented on direct appeal unless he can show cause and prejudice resulting from the error. A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment.'

*United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995) (citations omitted). "This procedural bar ... applies to a defendant's collateral attack on his sentence, just as it does to an attack on his conviction." *United States v. Allen,* 16 F.3d 377, 378 (10th Cir.1994).

■ Defendants have a right to the effective assistance of counsel on appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *United States v. Jones,* 121 F.3d 369, 370 (8th Cir.1997), the defendant alleged that trial counsel was ineffective in failing to file a timely objection to the Pre–Sentence Investigation Report. In refusing to address defendant's claim for the first time on appeal the Court noted that defendant had conceded that he could not show entitlement to a shorter sentence and that the sentence imposed was improperly computed.

The United States has conceded that petitioner has identified an issue as to which she would have succeeded had it been raised before this Court or on direct appeal. Petitioner, on the other hand, successfully argues that failure to allow the additional one-level adjustment was prejudicial since the guideline sentencing range applicable to a total offense level of 22

would be from 41 to 51 months, compared to the 57 months which were imposed, thus showing cause for the procedural default, by raising a genuine issue as to counsel's representation, and prejudice, by establishing a reasonable probability that the sentence would have been different had counsel objected at sentencing.

In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case. For example, to qualify under subsection (b)(2), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

U.S.S.G. § 3E1.1, comment. (n. 6) (1993). Subsection (a) provides a 2–level decrease in offense level. Subsection (b) provides an additional 1–level decrease for a defendant at offense level 16 or greater prior to operation of subsection (a) who both qualifies for a decrease under subsection (a) and has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the steps specified in subsection (b). Such a defendant has accepted responsibility in a way that ensures the certainty of his just punishment in a timely manner, thereby appropriately meriting an additional reduction.

U.S.S.G. 3E1.1 comment. (backg'd.) (1993). *Compare, United States v. Munoz,* 83 F.3d 7 (1st Cir.1996) (holding that defendant was entitled to additional 1–level reduction for timely notification to authorities of intention to plead guilty such as would avoid that the government expend its resources in preparing from trial).

*Counsel's Failure to Object to the Supervisory Role Upward Adjustment*

■ Petitioner's base offense level was adjusted upward by three levels based on her "role as organizer, leader, or supervi-

sor in the fraud scheme" pursuant to U.S.S.G. § 3B1.1(c). (Docket No. 82 at 8).

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4) (1993).

In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3B1.1(c).

U.S.S.G. § 3B1.1, comment. (backg'd.) (1993).

The Government's Version of the Facts reveals that petitioner was indeed an organizer, leader, or supervisor in the fraud scheme in which petitioner and codefendant Malone solicited oil well investments from various persons. In perpetrating the scheme, petitioner and codefendant Malone pitched for investments through misrepresentations in oil wells that were never commercially productive and deposited and used the investors' money for their own gain such as for petitioner to purchase two properties at Colinas del Yunque in Rio Grande, Puerto Rico. The total loss to investors in Puerto Rico was stipulated at approximately six-hundred thousand dollars. (Docket No. 76 at 20–25).

In the Petition to Enter a Plea of Guilty (Docket No. 49) petitioner acknowledged the maximum sentence (¶ 22), the terms of the Plea Agreement (¶ 24), and the Court's power to impose a sentence within the statutory maximum term (¶¶ 25–26), including consideration of all relevant conduct and mitigating and aggravating factors (¶¶ 29–30). The petitioner also acknowledged "that the Court may, with the aide (sic) of the Presentence Report determine the facts that are relevant to sentencing" in open court at the Change of Plea Hearing colloquy. (Docket No. 76 at 12–13).

— III —

*Counsel's Failure to Object to the United States' Failure to File a 5K1 Motion for Downward Departure as Breach of the Plea Agreement*

 "The Court begins its analysis with a well-settled proposition that is founded in the fundamental fairness doctrine of the Fifth Amendment: when the government makes a promise that induces someone to relinquish constitutional or other substantial rights, that promise must be fulfilled." *Ramallo v. Reno,* 931 F.Supp. 884, 892 (D.D.C.1996) (citing cases). If a defendant enters into a plea bargain, the Court has the responsibility to ensure that the defendant receives his or her benefit of the bargain. *United States v. Tilley,* 964 F.2d 66 (1st Cir.1992). The government may not breach any term of a plea agreement which induced a defendant to plead guilty. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

 The decision to file a motion for downward departure for substantial assistance to the government pursuant to U.S.S.G. § 5K1 is a matter within the prosecutor's discretion. "[A] government motion is a *sine qua non* to a departure for a defendant's substantial assistance," *United States v. Mariano,* 983 F.2d 1150, 1155 (1st Cir.1993), citing *Wade v. United States,* 504 U.S. 181, 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), subject to judicial review only if the refusal to file such a motion is based on an unconstitutional motive.

In this case, the record does not attest to the government's impermissible arbitrariness. To the contrary, at the Change of Plea Hearing, the prosecutor stated, "Since we are going to have a debriefing, and must corroborate in order to file a 5K.1 (sic) motion, if the sentencing could be extended just a little further than what it would normally be to give the government time to corroborate and be in a good position in good faith to file its motion?" (Docket No. 76 at 26).

At sentencing, the prosecutor Informed the Court of her reasons not to file a U.S.S.G. § 5K1 motion:

> We would also like to state just for the record that although we know counsel has spoken to the defendants about this matter, as part of the plea agreement there is a clause to the effect that if she gave us substantial cooperation that we would request a downward departure. Pursuant to that clause we proceeded to interview the defendant. She provided certain information. However, it is not—some of it is hard to verify. Allegations of drug trafficking which occurred sometime in the past in certain places. It would require keeping the place under surveillance for a while, and seeing that that place is currently being investigated for drug trafficking activities and other things contained therein. The phone number which was given was out of order. It is no longer operational. So we weren't able to call and confirm speaking to the people. So there are (sic) some information here that has not yet been checked out.
>
> However, we would like to represent to the Court at this time that if in the future any of the information provided

by her should lead to something substantial for the government that we would at that time file the appropriate motion.

(Docket No. 82 at 6–7).

Petitioner states that the Plea Agreement obliged the government to file a 5K1 motion.[1] The language of the pertinent clause of the Plea Agreement in fact suggests that the United States agreed that a 5K1 motion would be filed to inform the Court of petitioner's cooperation and, if the cooperation was substantial, to request a downward departure. The United States submits, on the other hand, that the Plea Agreement, interpreted under the principles of contract law, does not bind the United States' good-faith consideration of substantial assistance in its decision whether or not to file a 5K1 motion. *See, e.g., United States v. Hogan*, 862 F.2d 386, 388 (1st Cir.1988) (holding interpretation of plea agreements are subject to contract law principles).

Although the clause could be interpreted as requiring the United States to file a departure motion to inform the Court of the cooperation and, in the alternative, to request a departure, we decline to make that interpretation. At the Sentencing Hearing the prosecutor informed the Court of the general terms of petitioner's cooperation and the fact that it had not been substantial:

> THE COURT: At this time you would not be requesting a downward departure for substantial cooperation?
>
> [AUSA]: No. There has been none so far.

(Docket No. 82 at 7).

Although the pertinent clause was ill-phrased in the sense of lending itself to the

---

1. The Plea Agreement and Agreement to Co-operate (Docket No. 52 at 4 ¶ 10.a.), which remains under seal, reads:

 After defendant, Hilda Milagros Brown, pleads guilty pursuant to the terms of this plea agreement, the United States of America agrees:

 a. To make known to the Court the degree of cooperation and the veracity of the statements of defendant, Hilda Milagros

Brown, in the investigation. The United States will file a sealed motion pursuant to Section 5K1.1, U.S.S.G., informing the Court of defendant's cooperation with the government, and, if that cooperation is deemed substantial, requesting that a downward departure be awarded.

*See also,* Change of Plea Hearing (Docket No. 76 at 16) and Presentence Investigation Report at pp. 3, 25.

interpretation that filing of a 5K1 motion to inform the Court of defendant's cooperation regardless of whether it was substantial would be required, we cannot look at that particular portion of the clause in isolation since the sole purpose of a 5K1 motion is to request a downward departure and such a request was clearly conditioned, both by U.S.S.G. § 5K1 and the Plea Agreement's own terms, to the substantiality of said cooperation.

At sentencing, the United States informed the Court, without objection, that the cooperation was not fully developed reaffirming its compromise to "file the appropriate motion" should the cooperation proved to be substantial. At the same time, the United States unequivocally acknowledged that the cooperation given to that date had not been substantial. (Docket No. 82 at 7).

The promise to "file the appropriate motion" was not part of the Plea Agreement. Even if we found that it was a modification of its terms we would find that it met with petitioner's acquiescence. The record reflects that the prosecutor, far from being unilateral or arbitrary, addressed the fact that "counsel has spoken to the defendants (sic) about this matter" in open court. (Docket No. 82 at 6). The record further reflects that the promise to "file the appropriate motion" was not based on withholding the filing of a departure motion as the situation visited by the First Circuit in *United States v. Drown*, 942 F.2d 55, 58 (1st Cir.1991), where the First Circuit examined the situation "where a defendant had entered into a Plea Agreement to cooperate which did not include a section 5K1.1 clause and the government withheld filing of a 5K1 motion as premature alleging that the defendant had not yet completed cooperation." The First Circuit Court of Appeals vacated and remanded based in part on the following findings:

We do not question the honorableness of the prosecutor's intentions or the likely efficacy of their strategy. We believe, however, that this strategy, Insofar as it assumes that the government, at sentencing, may postpone its evaluation of a defendant's assistance until the defendant's services are completed, improperly merges the temporal boundaries established In section 5K1.1 and Fed. R.Crim.P. 35(b), respectively ... Thus, a unilateral decision by the government to reserve judgment on a defendant's presentence assistance disrupts the careful balance struck by Congress and the Sentencing Commission and impermissibly melds what should be two discrete determinations into one somewhat entropic evaluation.

*Drown*, 942 F.2d at 59.

In this case, however, contrary to *Drown*, the record supports the conclusion that, at the time of sentencing, the government made "a good faith evaluation of the assistance rendered to that date" and made a "yes-or-no decision ... on whether to file a section 5K1.1 motion." *Id.*, at 59 n. 7. *See also, United States v. Martin*, 25 F.3d 211, 216 (4th Cir.1994) (government may not predicate decision to defer filing of 5K1 motion on fact that it will make Rule 35(b) motion after sentencing). Finally, we note that the United States' promise to "file the appropriate motion" neither altered or influenced the deliberations or decisions of the Court at sentencing. *See, id.*, at 59.

The Court therefore concludes that counsel's failure to object to the government's failure to file a departure motion pursuant to U.S.S.G. § 5K1.1 cannot be deemed unreasonable. The record supports the proposition that the United States complied with its end of the bargain in assessing the petitioner's cooperation and reached the good-faith conclusion that same was not substantial. The fact that the United States promised to file a motion for reduction of sentence in the event that the cooperation developed to be substantial does not detract from the Plea Agreement. Rather, the United States was affording the defendant an additional opportunity to which it had not originally

agreed, that being to be rewarded for post-sentence cooperation.

 Having examined the record of the case, it stands to reason that counsel was not ineffective in failing to raise an objection over the government's decision not to file a 5K1 motion. An attorney is not obliged to raise meritless claims and failure to do does not render his or her legal assistance ineffective. *See, e.g., Acha v. United States*, 910 F.2d 28 (1st Cir. 1990); *United States v. Victoria*, 876 F.2d 1009 (1st Cir.1989). The record supports the conclusion that such an objection would have been denied as meritless.

— IV —

*Counsel's Failure to Object to a Sentence at the Upper end of the Guideline Sentencing Range*

Defendant was sentenced to serve concurrent terms of imprisonment of 57 months as to each count of conviction, a sentence within the applicable Guideline Sentencing Range. Based on our discussion at number—II—above, we need not reach this issue.

WHEREFORE, for the reasons stated herein, defendant's 2255 Motion is GRANTED in part and DISMISSED in part. Having found that defendant was entitled to an additional one-level reduction for acceptance of responsibility for a Total Offense Level of 22 and a Guideline Sentencing Range of 41–51 months, defendant is hereby resentenced to serve a term of 51 months of imprisonment under the following Guideline computation:

| | | |
|---|---|---|
| Base Offense Level | | 20 |
| Specific Offense Characteristics | + | 3 |
| Role in the Offense Adjustment | + | 2 |
| Victim Related Adjustment | | 0 |
| Adjustment for Obstruction of Justice | | 0 |
| Adjustment for Acceptance of Responsibility | - | 3 |
| TOTAL OFFENSE LEVEL | | 22 |

Except for the additional one level reduction for acceptance of responsibility, all remaining findings and applicable grounds for sentencing remain the same.

IT IS SO ORDERED.