**Jaime PINILLOS, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**Civil 10–1698(CCC).**
**(Criminal 01–0520(CCC)).**

United States District Court,
D. Puerto Rico.

Nov. 29, 2013.

Jaime Pinillos, Loretto, PA, pro se.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Defendant.

## ORDER

CARMEN CONSUELO CEREZO, District Judge.

Having considered the Motion to Vacate, Set Aside, and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by petitioner Jaime Pinillos–Prieto (Pinillos) **(docket entry 1)**, the United States' Response in Opposition (docket entry 4), and the Report and Recommendation (R & R) issued by U.S. Magistrate–Judge Justo Arenas on July 29, 2013 (docket entry 24), which remains unopposed, said Report and Recommendation is APPROVED and ADOPTED and Pinillos' 28 U.S.C. § 2255 Petition is DENIED and ORDERED DISMISSED in its entirety. Judgment shall be entered accordingly.

SO ORDERED.

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255*

JUSTO ARENAS, United States Magistrate Judge.

## I

### A. PROCEDURAL BACKGROUND: TRIAL LEVEL

Petitioner Jaime Pinillos–Prieto was indicted on July 24, 2001 in a two-count indictment. (Crim. No. 01–520, Docket No. 10). Two other defendants, Rodrigo Campusano and Nolgie Rodriguez–Zamot were also indicted. Petitioner was charged in the first count in that, from on about early July 2001 up to and including July 11, 2001, in the District of Puerto Rico, petitioner and the codefendants did knowingly, wilfully, intentionally and unlawfully conspire, confederate, and agree together and with each other and with diverse other persons known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully possess with intent to distribute and distribute in excess of five kilograms or more of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 846. (Crim. No. 01–520, Docket No. 10). Nineteen overt acts are pleaded in Count One, all related to meetings, conversations and agreements focused on the purchase of 100 kilos of cocaine, which, in the theory of the government, was the purpose of the conspiracy.

Count Two of the indictment charged the defendants, aiding and abetting each other, with knowingly, intentionally, and unlawfully attempting to possess with intent to distribute in excess of five kilograms of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2; *see United States v. Pinillos–Prieto,* 419 F.3d 61, 66 (1st Cir.2005). The charges stemmed from a reverse sting operation in which government agents [1] offered to sell drugs to persons suspected of being drug buyers, in this case, the three defendants, including petitioner. *Id.* at 63; *see Pinillos v. United States,* 2013 WL 2356137 (D.P.R. May 29, 2013).

Petitioner and the other two defendants were arrested on July 11, 2001 and en-

---

1. Two of the government agents were experi-

enced paid informants, both Colombian na-

tered pleas of not guilty before me on July 27, 2001. (Crim. No. 01–520, Docket Nos. 14, 15, 16). An active motion practice by all defendants followed, including motions to suppress, to sever and to dismiss. Petitioner suffered a psychotic episode during his detention at the federal metropolitan detention facility (MDC) and was evaluated by a forensic psychiatrist, Dr. Jose Fumero. Plea offers were eventually made to petitioner and the other defendants. The government's original offer was of 120 months and petitioner counter-offered 72 months excluding the possibility of his meeting the safety valve criteria. (Docket No. 1–5 at 10). The final offer made by the government was of 96 months imprisonment. The deadline for acceptance of the last offer expired on September 25, 2002. None of the defendants accepted.

Trial began on October 17, 2002 and ended on October 25, 2002. (Crim. No. 01–520, Docket Nos. 154, 168). The evidence presented was primarily testimonial with videotapes and audiotapes of poor quality which tended to support the fact of the meetings between defendants and government agents, and also lent support to some of the overt acts related in Count One of the indictment. The jury clearly believed the government agents over the testimony of the three defendants. The trial transcript reflects hard fought, intense activity of all involved. All defendants were found guilty as to both counts of the indictment. (Crim. No. 01–520, Docket No. 168). Motions for judgment of acquittal were argued and denied during trial.

Presentence reports were transmitted to all counsel on February 5, 2003. On March 3, 2003, the United States moved the court to find that petitioner and one other defendant had obstructed the admin-

tionals.

istration of justice. (Crim. No. 01–520, Docket No. 212). Petitioner opposed the motion on March 10, 2003 and also moved for downward departure, based in part on his mental state. (Crim. No. 01–520, Docket Nos. 221, 222). Petitioner was sentence on March 26, 2003 to 235 months imprisonment on each count, to be served concurrently with each other. (Crim. No. 01–520, Docket No. 237). A notice of appeal was filed on the same date. (Crim. No. 01–520, Docket No. 240)

## B. PROCEDURAL HISTORY: APPELLATE LEVEL

All defendants appealed. On August 17, 2005, the United States Court of Appeals for the First Circuit affirmed the conviction but remanded for re-sentencing in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which had been decided on January 12, 2005. *See United States v. Pinillos–Prieto*, 419 F.3d at 74–75. Since petitioner challenged the court's calculation of the drug quantity as 100 kilograms of cocaine, and also preserved the sentencing claim under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), remand was directed in light of *Booker*. The court of appeals addressed arguments related to the sufficiency of the evidence, for example, whether any agreement was related to the sale of Compaq Presario laptops or to cocaine. *Id.* at 68. The defense argument was that the parties never mentioned "cocaine" or "kilos" (raised by petitioner). Also addressed were the arguments of lack of criminal agreement, lack of actual money to purchase a large amount of cocaine (raised by petitioner), and the court's improperly allowing expert testimony by a law enforcement officer related to the modus operandi

of drug trafficking organizations. *Id.* at 69. Composition of membership of the conspiracy and drug quantity calculations were also raised as issues on appeal. *Id.* at 72–75.

### C. PROCEDURAL HISTORY: REMAND FOR RE–SENTENCING

Prior to re-sentencing, petitioner objected to his pre-sentence investigation report, which objections were overruled by the court. (Crim. No. 01–520, Docket Nos. 389, 416, 445, 454); *see United States v. Pinillos,* 2007 WL 1341228 (D.P.R. May 3, 2007).

On August 10, 2007, petitioner *pro se* moved for a judgment of acquittal and for new trial in a broad, well-documented and late motion. (Crim. No. 01–520, Docket No. 451). The motion was primarily based upon the alleged irregularities in the audiotape transcripts which contained the words kilo or kilos instead of primo (cousin) or primos (cousins), and also on the authenticity of the audiotape referred to throughout as N–2. Petitioner includes extensive comparisons of audiotape transcript translations as well as a lengthy exculpatory history of his business dealings with informant Nelson Rodriguez having to do with computers, as well as issues with Colombian customs and taxes. Indeed, the motion has a 2–volume, 3–inch thick appendix with over 500 pages of materials under 21 separate tabs. Some of the material is in the Spanish language with no accompanying translation. The motion for new trial was denied as untimely in open court, three days after it was submitted. (Crim. No. 01–520, Docket No. 455).

Upon re-sentencing on August 13, 2007, petitioner was again sentenced to 235 months imprisonment on both counts of the indictment, to be served concurrently. (Crim. No. 01–520, Docket No. 461). Petitioner then filed a notice of appeal of the amended judgment. (Crim. No. 01–520, Docket No. 460).

### D. PROCEDURAL HISTORY: SECOND APPEAL

The court of appeals addressed the sentencing issues raised by petitioner and affirmed his sentence of August 13, 2007 on February 13, 2009. *United States v. Campusano,* 556 F.3d 36 (1st Cir.2009). It determined that the drug quantity determination of 100 kilograms of cocaine was warranted, that petitioner was not entitled to a lower drug quantity in determining the sentence due to alleged sentencing factor manipulation by the government, *see id.* at 40, (a variation of entrapment of sorts), that the obstruction of justice sentencing enhancement was warranted (based on petitioner's testimony at trial), and that the 235–month sentence was reasonable. No petition for a writ of certiorari was filed by petitioner.

### II

### A. PROCEDURAL HISTORY: COLLATERAL REVIEW

This matter is before the court on *pro se* petitioner Jaime Pinillos–Prieto's timely motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, filed on July 22, 2010. (Docket No. 1.) Petitioner argues that he was denied effective assistance of counsel by Assistant Federal Public Defender Joannie Plaza Martinez (at the trial phase), and Ramon Garcia Garcia, (at the re-sentencing phase), as well as by appellate counsel Jean Philip Gauthier Inesta (at the first appeal), due to their having failed to timely file either motions, objections or requests when they were acting as petitioner's attorneys. (Docket No. 1 at 1–2). Petitioner attacks the perform-

ance of counsel in every possible manner and in much detail.[2] Because of their clear errors and deficient performances, petitioner was arguably subjected to a sentence of 235 months. Petitioner focuses on the arguably clear error on the part of the sentencing court in maintaining that he was to be held responsible for 100 kilos of cocaine, and in refusing to entertain a downward departure as requested during the first sentencing process. (Docket No. 1 at 2). Petitioner raises seven specific points of ineffective assistance in support of his request for collateral review:

1) Counsel was ineffective for failing to insure a fair trial and disclose, investigate the analysis of exculpatory and impeachment information in regard to all discovery provided by the prosecutor before trial.

2) Counsel was ineffective for failing to a duty of loyalty and a duty to consult with the defendant on important decisions, a duty to keep the defendant informed of important developments in the course of the prosecution and "a duty to bring to bear such skill and knowledge as will render the trial a reliable advers[arial] testing process."

3) Counsel was ineffective in failing to properly prepare for sentencing in regards to the safety valve proffers.

4) Counsel was ineffective for failing to make the hearing and adversarial testing process related to the safety valve hearing applicability to minor/minimum role.[3]

5) Counsel rendered ineffective assistance in regards to properly obtaining a favorable downward departure for substantial assistance.

6) Counsel was ineffective in failing to pursue prosecutorial misconduct.

7) Counsel was ineffective in failing to submit motions to raise Fourth Amendment allegations in support of its requests to suppress evidence, that is, Exhibits N1 and N2.

Docket No. 1–1 at 3.

Appellate counsel Gauthier is charged with committing the following errors and thus rendering ineffective assistance, as appellate counsel, under the Sixth Amendment:

1) Appellate counsel failed to raise the issue of prosecutorial misconduct.

2) Counsel failed to argue error in relation to the court's accepting tampered evidence after the U.S. Magistrate Judge had dismissed the same.

3) Counsel failed to prevent a miscarriage of justice by not raising as sentencing error a three-point reduction which could have been awarded based upon U.S.S.G. § 2X1.1 (acts leading to the supposed transaction were never finished).

4) Counsel did not make an analysis of audiotape N–2.

Docket No. 1–1 at 23.

Petitioner concludes his 41–page memorandum by going into the details of sentencing options and factors to be considered by the court, factors which the sentencing court may not have thought were available, such as those listed in 28 U.S.C. § 994(d), including role in the of-

---

**2.** Petitioner also attacks the performance of defense counsel Lydia Lizarribar and Jose Romo Matienzo who represented the other two defendants at trial. He charges that they also acted as federal prosecutors in their performances as did his own trial, re-sentencing and appellate counsel. (Tr. Re-sentence hearing 08/13/2007, p. 8); (Crim. No. 01–520, Docket No. 509).

**3.** Co-defendant Rodriguez–Zamot raised the issue of minor role prior to his own re-sentencing. (Crim. No. 01–520, Docket No. 411).

fense, criminal history, family ties and responsibilities, mental and emotional condition. (Docket No. 1–1 at 30–31). Petitioner seeks an evidentiary hearing where the prejudice caused by his trial counsel and appellate counsel can be shown. Ultimately, he again seeks a new trial.

In the government's response dated October 4, 2010, it maintains that petitioner's claims are conclusory in nature in relation to trial counsel's supposed lethargy in failing to file pretrial motions. The government notes that trial tactics are not generally reviewable in a collateral attack. Finally, as to trial performance, the government stresses that petitioner has failed to show that the outcome would have been different if counsel had done the things which petitioner argues counsel should have done.

In relation to the argument directed to the safety valve and downward departure, the government refers to the lack of foundation in the record to sustain petitioner's argument. First, the government argues that petitioner never supplied substantial assistance to the authorities. Indeed, petitioner always claimed that he was innocent. At sentence, petitioner emphasized his innocence. In fact, petitioner received a 2–level enhancement for obstruction of justice resulting from his trial testimony. The government is in total disagreement with the proffer of any plea offer. Not only was any plea offer rejected, petitioner then committed perjury at trial, claiming he came to Puerto Rico to buy computers. Because there is no basis to apply the benefits of the safety valve which requires complete disclosure, the government also attributes to this argument a total lack of merit.

As to appellate counsel, the government notes that the argument is meritless. (Docket No. 10). Furthermore, the government argues that four primary arguments directed to appellate counsel are wholly undeveloped beyond being mentioned, that is, that they have no evidentiary support. It argues that petitioner does not have the right to appellate counsel's raising every non-frivolous issue on appeal. The government notes that the authenticity of the audio recordings was never an issue until right before the second sentencing hearing. Consequently, appellate counsel cannot be found at fault for not raising the issue at the first appeal. (Docket No. 4 at 11).

Finally, the government takes issue with the argument related to 28 U.S.C. § 994(d), quoting from the court of appeals' second opinion in the case. There the matter was touched upon by petitioner and disregarded as undeveloped. Thus, it was settled on appeal.

Having considered the arguments of the parties and for the reasons set forth below, I disagree with petitioner's argument that trial counsel's performance fell below an objectively reasonable standard, providing a predicate for a Sixth Amendment violation. I also disagree that any performance caused prejudice, and therefore disagree that petitioner's Sixth Amendment rights were violated by trial counsel's performance. The same conclusion applies to counsel on re-sentencing for the reasons I will explain below, primarily based upon petitioner's failure to cooperate with him. I also find that petitioner has failed to prove that appellate counsel's performance was ineffective to reach a level of violation of his Sixth Amendment right to appellate counsel. Therefore I recommend that petitioner Pinillos–Prieto's motion to vacate, set aside, or correct sentence be DENIED without an evidentiary hearing.

## III. DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a); *Hill v. United States,* 368 U.S. 424, 426–27 n. 3, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998). The burden is on the petitioner to show his entitlement to relief under section 2255, *David v. United States,* 134 F.3d at 474, including his entitlement to an evidentiary hearing; *Cody v. United States,* 249 F.3d 47, 54 (1st Cir.2001) (quoting *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993)). It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case." *United States v. Carbone,* 880 F.2d 1500, 1502 (1st Cir.1989); *United States v. McGill,* 11 F.3d at 226 (quoting *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir.1974)). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.' ' " *United States v. McGill,* 11 F.3d at 226 (quoting *Shraiar v. United States,* 736 F.2d 817, 818 (1st Cir.1984)). Petitioner is required to make a substantial threshold showing that he is entitled to such a hearing. *Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524

(1992); *United States v. Romsey,* 975 F.2d 556, 557–58 (8th Cir.1992).

> [E]videntiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion. Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.

*United States v. Isom,* 85 F.3d 831, 838 (1st Cir.1996) (*quoting United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993))[4].

▮▮▮ Collateral attack on non constitutional and non jurisdictional "claims are properly brought under section 2255 only if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States,* 37 F.3d 769, 772 (1st Cir.1994) (quoting *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). A claim of ineffective assistance of counsel is one such constitutional violation that may be raised by way of a section 2255 motion. *See United States v. Kayne,* 90 F.3d 7, 14 (1st Cir. 1996). And because petitioner appears *pro se,* his pleadings are considered more liberally, however inartfully or opaquely pleaded, than those penned and filed by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Proverb v. O'Mara,* 2009 WL 368617 (D.N.H. Feb. 13, 2009). Notwithstanding such license, petitioner's *pro se* status does not excuse him from complying with both procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886,

---

**4.** The hybrid nature of 2255 proceedings is not a theme in this recommendation. Technically, the motion is part of the criminal case but civil in nearly all of its aspects, reflecting its derivation from 28 U.S.C. § 2254, which is clearly civil in nature. *See e.g. DiMattina v. United States,* 949 F.Supp.2d 387, 400–02 (E.D.N.Y.2013).

890 (1st Cir.1997). This requirement also includes the filing of sworn statements that include facts rather than conclusions. *See e.g. Teti v. Bender*, 507 F.3d 50, 63 (1st Cir.2007); *Casas v. United States*, 576 F.Supp.2d 226, 233 (D.P.R.2008). While there is nothing opaque or inartful in this intelligent petitioner's submissions, and while I may determine that some of his arguments lack foundation or are undeveloped, I am still aware that he is attributed some consideration based upon his *pro se* status.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ "In all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. 6. The right to counsel is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), citing, among others, *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 55–60, 77 L.Ed. 158 (1932). To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The two part test for constitutionally ineffective assistance of counsel was set forth in the *Strickland* case. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Smullen v. United States*, 94 F.3d 20, 23 (1st Cir.1996); *Knight v. United States*, 37 F.3d at 774. The petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced his defense.'" *Owens v. United States*, 483 F.3d 48, 63 (1st Cir.2007) (quoting *Strickland v. Wash-*

*ington*, 466 U.S. at 687–88, 104 S.Ct. 2052). The defendant bears the burden of proof for both elements of the test. *See Cirilo–Muñoz v. United States*, 404 F.3d 527, 530 (1st Cir.2005) (citing *Scarpa v. Dubois*, 38 F.3d 1, 8–9 (1st Cir.1994)).

■ "'[J]udicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.'" *Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996) (quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052); *see United States v. Valerio*, 676 F.3d 237, 246 (1st Cir.2012); *United States v. Rodriguez*, 675 F.3d 48, 56 (1st Cir.2012). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States*, 94 F.3d at 23 (quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052).

■ The second element of the *Strickland* test "also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Argencourt v. United States*, 78 F.3d at 16 (quoting *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. 2052). There must exist a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dugas v. Coplan*, 428 F.3d 317, 334 (1st Cir.2005) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052); *also see Missouri v. Frye*, — U.S. —, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012). "[A] reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *González–Soberal v. United States*, 244 F.3d 273, 278 (1st Cir.2001) (quoting *Strickland v. Washington*, 466 U.S. at 694,

104 S.Ct. 2052); *see Turner v. United States,* 699 F.3d 578, 584 (1st Cir.2012).

### IV. ISSUES

I will address the issues as raised by petitioner in his 41–page memorandum, and also address the detailed errors he points out in trial counsel's performances.

1) Counsel was ineffective for failing to insure a fair trial and disclose, investigate the analysis of exculpatory and impeachment information in regard to all discovery provided by the prosecutor before trial.

2) Counsel was ineffective for failing to a duty of loyalty and a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the course of the prosecution and "a duty to bring to bear such skill and knowledge as will render the trial a reliable advers[arial] testing process." (Docket No. 1–1 at 3).

Petitioner presents a broadside attack upon the performance of trial defense counsel. Petitioner complains that trial counsel did not visit him at the Metropolitan Detention Facility and filed practically no motions although asked to file such motions by petitioner, motions such as a motion for severance (to sever co-defendant Nolgie Rodriguez from the other two), a motion to suppress tape recorded conversations, and for an audibility hearing, known in this district as a Carbone hearing. *United States v. Carbone,* 798 F.2d 21, 25 (1st Cir.1986). He particularly asked counsel to acquire all information about the informants and codefendants. Yet more specifically, petitioner argues (I add inaccurately) that trial counsel failed to file motions under Rules 12 and 16 of the Federal Rules of Criminal Procedure, under Rule 404(b) of the Federal Rules of Evidence, under 18 U.S.C. § 3500 (Jencks Act), and under the Fourth and Fifth Amendments to the U.S. Constitution. (Docket No. 1–1 at 5). Nor was any status conference requested in order to view original videotapes and listen to original audiotapes (another inaccuracy).

Petitioner argues that he did not know about the prior convictions of codefendant Nolgie Rodriguez Zamot and that if he had known of the prior convictions, he might have made a better decision and signed a plea agreement which favored him, considering the sentencing factors of 18 U.S.C. § 3553 and the safety valve provisions, U.S.S.G. § 5C1.2. At the same time that he argues this point, he stresses that he is nothing but a computer merchant, which is what he told his attorney, the jury, and the sentencing judge. His position in relation to this point is too ethereal to be given significant weight, particularly when reviewing his consistent trial testimony relating a business deal regarding 100 laptops at a price of $1,350 each, which if purchased in groups of ten would amount to $13,500 per grouping (when compared to the testimony of the government agent who stated that the negotiation was for 100 kilos of cocaine, at $13,500 per kilo for a total cost of almost $1,400,000). (Tr. T. Oct. 17, 2002, p. 51)(Crim. No. 01–520, Docket No. 280).

▮ As I will point out below, trial counsel was hardly inactive or incompetent in defending this case. That task was not made easier by the lethargic manner in which the government produced physical evidence, transcripts, exculpatory evidence and impeachment material. Information related to the primary participating informant was difficult to harvest and production was late.[5] Nevertheless, defense

---

**5.** The tardiness may in part be due to active

plea negotiations having been terminated

counsel, who may not have visited petitioner to his satisfaction, filed cogent motions and joined in others. While defense counsel did not move to sever petitioner under Fed.R.Crim.P. 14, the spillover effect is not so prejudicial that an experienced defense counsel might feel it essential to file such a motion. According to the testimonies of the three defendants, petitioner met Nolgie Rodriguez, a friend of Campusano, at the Hampton Inn Hotel in Isla Verde three days before the day of the arrest (Tr. T. Oct. 23, 2002, pp. 66, 167, 178) and had very little conversation with him. Such an omission does not lead to a Sixth Amendment violation due to ineffective assistance. The court of appeals has stated on many occasions, "the general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *United States v. Saunders*, 553 F.3d 81, 85 (1st Cir.2009), citing *United States v. Soto–Beniquez*, 356 F.3d 1, 29 (1st Cir.2004). The axiom is particularly true in conspiracy charges. *See Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Tiem Trinh*, 665 F.3d 1, 17–18 (1st Cir.2011). Petitioner's lengthy explanation about the consequences of this purported error contrasts sharply with the legally negligible consequences of spillover. *See e.g. United States v. Snarr*, 704 F.3d 368, 397 (5th Cir.2013); *United States v. Rose*, 914 F.Supp.2d 15, 35–36 (D.Mass. 2012).

Petitioner relies on Justice Souter's words in *Rompilla v. Beard*, 545 U.S. 374, 387, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) to emphasize counsel's inadequate representation particularly in relation to investigating the defendant Nolgie Rodriguez's criminal record. (Here, petitioner has none.) The objections filed by both counsel Plaza and counsel Garcia disarm any controlling impact of the holding in *Rompilla*, which is focused on sentencing factors in a capital case, and counsel's failure to investigate matters contained in that defendant's own criminal record which the prosecution was to use in support of aggravating factors in seeking a death sentence. *See also Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

There may be some analogy in the argument but insufficient to be given weight.

3) Counsel was ineffective in failing to properly prepare for sentencing in regards to the safety valve proffers.

4) Counsel was ineffective for failing to make the hearing and adversarial testing process related to the safety valve hearing applicability to minor/minimum role.

■ Petitioner argues that counsel should have sought a hearing related to the safety valve provisions and should have sought the applicability of a minor/minimum role participation in the conspiracy. In order to qualify for a "safety valve" sentence reduction under 18 U.S.C. § 3553(f), a defendant must persuade the court that he meets all five of the requirements for eligibility enumerated in the statute. What is seminal to compliance with the five requirements is that if the criteria are all met as set out in U.S.S.G. § 5C1.2, the defendant is eligible for a sentence below the statutory mandatory minimum, in this case, 120 months. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II); *Dorsey v. United States*, —— U.S. ——, 132 S.Ct. 2321, 2337, 183 L.Ed.2d 250 (2012). However, there is no evidence in the record that petitioner was a minor participant, or that he had a minimal role, and no evidence that petitioner was eligible for the application of the safety valve provisions

with a final offer in late September, 2002, the month before trial.

since they require that he provide the government all information and evidence concerning the offense or offenses that were part of the same course or conduct or of a common scheme or plan. (Safety valve). This includes that he accept full responsibility for his participation in the cocaine distribution conspiracy. *See e.g. United States v. Gaviria,* 116 F.3d 1498, 1521–22 (D.C.Cir.1997); *cf. United States v. Ayala–Tapia,* 520 F.3d 66, 69–70 (1st Cir.2008). Contrariwise, petitioner clearly espoused the position that he was innocent and that the subject of negotiations were computers, not narcotic drugs. His testimony at trial was unequivocal and unflagging, to the point that he was awarded an enhancement for obstruction of justice, a determination which was considered and affirmed by the court of appeals. *United States v. Campusano,* 556 F.3d at 41. This argument is clearly undeveloped and is otherwise lacking in merit.

5) Counsel rendered ineffective assistance in regards to properly obtaining a favorable downward departure for substantial assistance

For obvious reasons, no U.S.S.G. § 5K1.1 motion was filed, which in a nutshell means that petitioner did not render substantial assistance according to the United States. Had petitioner rendered "substantial assistance", the United States would have been obliged to file a motion based upon substantial assistance as the phrase is used in 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Then the sentencing guidelines might lead the court to reduce the sentence, but only if the United States filed such a motion. The United States always retains the sole discretion to determine if any assistance was substantial and thus must decide if the downward departure motion is warranted. The refusal to file such a motion is reviewable only for prohibited motives such as

those related to race, national origin, or religion. *See United States v. Aderholt,* 87 F.3d 740, 742 (5th Cir.1996); *United States v. Garcia–Bonilla,* 11 F.3d 45, 46–47 (5th Cir.1993); *United States v. Alegría,* 3 F.Supp.2d 151 (D.P.R.1998). Furthermore, the decision to move for a departure is generally committed to the prosecutor's discretion. *United States v. Montánez,* 82 F.3d 520, 522 (1st Cir.1996); *Carey v. United States,* 50 F.3d 1097, 1101 (1st Cir.1995). In any event, this issue was not raised by second appellate counsel after re-sentencing. Again, there is no evidence or information in this record from which a conclusion can be reached that petitioner offered substantial assistance to the government or was willing to do so except for his knee jerk argument that if he knew of Nolgie Rodriguez' conviction record, he would have settled for a 48–month sentence. To the contrary, not only did petitioner argue that he was innocent, but, again, he took the witness stand on his own behalf and provided what was obviously an incredible story to the jury and to the sentencing court. Indeed, instead of a downward departure for substantial assistance, he received an upward departure for obstruction of justice under U.S.S.G. § 3C1.1. *United States v. Pinillos–Prieto,* 419 F.3d at 66. And the Court specifically took into account and paraphrased the sentencing factors in 18 U.S.C. § 3553(a) in determining the final sentence. Finally, this is another undeveloped argument clearly lacking a basis in the record.

Petitioner also alleges that it was error for the sentencing court not to have considered sentencing factors, such as those listed in 28 U.S.C. § 994(d), including role in the offense, criminal history, mental health, family ties and responsibilities. The United States notes that the court of appeals has disposed of the sentencing issues raised by petitioner after

remand and that other issues were never raised. When a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot attempt to relitigate the claim in a section 2255 motion. *Withrow v. Williams*, 507 U.S. 680, 720–21, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir.2002), cited in *Mangual–Garcia v. United States*, 2010 WL 339048 at *7 (D.P.R. Jan. 21, 2010); *Argencourt v. United States*, 78 F.3d at 16 n. 1; *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir.1994). The reasonableness of the sentencing was already raised by petitioner on appeal, including sentencing factors contained in 18 U.S.C. § 3553(a), and decided against him. The sentencing factors of 28 U.S.C. § 994 could have been raised on appeal but were not. Those same issues cannot be considered on collateral review.

6) Counsel was ineffective in failing to pursue prosecutorial misconduct.

Petitioner's main argument, which overshadows all other arguments, is the alleged fraud on the court perpetrated by the prosecutor in not disclosing favorable information to the grand jury as well as presenting a false transcript in court of audiotape N–2 which reflected "kilo" or "kilos" when he testified that he never used those words. This precise subject matter was clearly raised by petitioner in the *pro se* motion for judgment of acquittal or for new trial based on newly discovered evidence filed on August 10, 2007 on the eve of the resentencing hearing. (Docket No. 1–3). But the inaccuracy of the translation in the transcripts was also raised before and during trial. The final transcript for audiotape N–2 was given to petitioner on October 17, 2002, the first day of trial. (Tr. T. Oct. 17, 2002, p. 4).

A draft had been provided to defense counsel the week before but prosecutor Schulte announced that the audiotape had more recently been given to another interpreter in order to provide side-to-side English/Spanish translations which were not provided in the first transcript which was faulty in that respect. The reason given for this event is the prosecutor's knowledge that the court prefers side-by-side translations (Tr. T. Oct. 17, 2002, p. 7). Petitioner asked the court at the sentencing hearing to listen to the tape marked N–2 used at trial (although it had already been played at trial over objection by all counsel [6] (Tr. T. Oct. 21, 2002, p. 77)), stressing the repeated word "cousin" and not "kilo", couching the request in constitutional terms. Petitioner also noted that the reverse sting operation began in Bogota, Colombia on February 21, 2000 with the importation of 26 printers from Miami, printers which were abandoned at Colombian Customs and therefore seized by the authorities, which required petitioner to pay 400,000 Colombian pesos (about $200) to Efrain Torres, a Customs agent in Colombia and friend of informant Nelson Rodriguez to be able to acquire the printers. (Because of the investigation having started in the Republic of Colombia by a United States law enforcement agent, he also alleges a violation of international law and Colombia's sovereignty). Petitioner mentions his first meeting with informant Nelson Rodriguez in Bogota in mid-October 2000. (Docket No. 1–3). He relates his relationship with informant Nelson Rodriguez from its start in Bogota, through a month-long visit in Miami from May 10, 2001 to June 15, 2001. The meetings and conversations in Puerto Rico are also described. He relates a business ven-

---

**6.** The Court announced: "All right. This recording may be played, and this is Exhibit 7, Members of the Jury. Please follow the transcript as the recording is played. Don't stay behind or go ahead. Go with the recording. [Tape played]" (Tr. T. Oct. 21, 2002, p. 77).

ture revolving around the purchase of personal computers and related equipment.[7] Petitioner emphasizes the inaccuracies of the transcripts prepared by Ms. Neri Golden, U.S. Army Military Intelligence (certified on October 17, 2002), and Gladys Rivera of Bonafide & Certified Reporting (no date of certification but prior to October 17, 2002). (Docket No. 1–3 at 14)[8]. The complete tapes were arguably never heard in court.[9] Petitioner also relates his numerous requests over the years to receive a copy of audiotape N–2. The court denied the request as untimely. (Docket No. 1–1 at 9). The matter of the alleged irregularity subject of the motion for new trial was neither appealed nor argued on appeal. Nor is there any allegation of ineffective assistance of counsel in relation to petitioner's court-appointed attorney for the second appeal, attorney Angela G. Lehman, whose efforts on behalf of petitioner concluded after seeking rehearing and rehearing en banc. *United States v. Campusano*, 556 F.3d at 38.

 "In a collateral attack petitioner may not litigate ... new issues that could have been, but were not, raised in direct appeal, absent an intervening change in the law." *Garcia v. United States*, 371 F.Supp.2d 11, 20 (D.P.R.2005), citing *Davis v. United States*, 417 U.S. 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *see Fernandez–Malave v. United States*, 502 F.Supp.2d 234, 238 (D.P.R. 2007). However, the inquiry does not stop here. Petitioner has procedurally defaulted on this claim by not raising the same on direct appeal. He could have raised the issue of timeliness as well the matter of newly discovered evidence. Section 2255 motions have exhaustion requirements and previously appealing an issue raised collaterally is one of them. *See Brown v. United States*, 42 F.Supp.2d 122, 127 (D.P.R.1998). Nevertheless, petitioner can breach the procedural default redoubt if he can show cause and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), cited in *Fernandez–Malave v. United States*, 502 F.Supp.2d at 238. " 'Cause' must be measured against a stringent standard of diligence, and 'ordinarily requires a showing of some external impediment preventing counsel from constructing or raising a claim.' " *Id.* at 238–39, citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see Vega–Colon v. United States*, 463 F.Supp.2d 146, 153 (D.P.R.2006). Assuming petitioner may show cause, such as an instruction to his attorney to argue the meritorious point of fraudulent or inaccurate transcript, or an audiotape that has been tampered with, which was the subject of the motion for new trial, then he must also show prejudice, which he can show if there is a reasonable probability that the trial results would have been dif-

---

**7.** In the motion for new trial, petitioner accuses then United States Attorney H.S. Garcia, and assistant United States attorneys Irene Feldman, Nelson Perez Sosa, Nathan Shulte, Rebecca Kellogg de Jesus, Aixa Maldonado Quinones and Guillermo Gil Bonar of prosecutorial and outrageous misconduct because they tainted the transcripts of audiotape N–2. (Docket No. 1–3 at 12).

**8.** Petitioner notes that on October 19 or 20, 2002 (during trial), defender Plaza visited him at MDC and they listened to audiotapes N–1 and N–2, finding sixty-six differences or inaccuracies between the transcripts made by Neri Golden and by Gladys Rivera. (Docket No. 1–3 at 18, ¶ 7).

**9.** Petitioner states that he finally received audiotape N–2 from the Colombian Viceconsul in Puerto Rico on October 5, 2006 and began listening to it, handwriting each word of N–2. He then typed transcripts of his own. (Docket No. 1–3 at 19, ¶ 13).

ferent if the claimed errors in procedural default had not occurred. However, there is no indication that the trial results would have been different if a translation of the allegedly offensive transcript would have read primo (cousin) instead of "kilo", referring to cocaine. The use of code language in this reverse sting operation was extensive during the trial, as referred to by the court of appeals. *See United States v. Pinillos–Prieto,* 419 F.3d at 68. Indeed, such an oversight by any trafficker would be an anomaly and it taxes credulity to believe that a case with a law enforcement agent and two experienced informants as witnesses would be willingly or carelessly placed in jeopardy by manipulating a translation from a poor quality tape. Furthermore, the other two defendants testified that they knew nothing about computers. Co-defendant Nolgie Rodriguez–Zamot testified that he did not hear any conversation about computers. (T. Tr. Oct. 23, 2002, p. 182). The versions provided by the other defendants (one of them a gardener in Miami and the other the operator of a car wash, also in Miami), each one of whom had a different reason for being at the meetings with the government agents, were disbelieved to the point where petitioner and one other defendant were awarded a 2–level sentencing enhancement for obstruction of justice. *United States v. Pinillos–Prieto,* 419 F.3d at 66. Nevertheless, petitioner has not shown cause why the issue that was resolved by the district court was not appealed. Had petitioner informed second appellate counsel Lehman to appeal the denial of the motion for new trial, the first prong of *Strickland* might have been complied with. As the matter now stands, the procedural default remains in effect. The notice of appeal filed on August 22, 2007 referred to the final judgment and sentence entered on August 13, 2007. (Criminal No. 01–520, Docket No. 460). The pro

se notice of appeal filed on August 31, 2007 refers to the judgment and conviction on re-sentencing. (Criminal No. 01–520, Docket No. 466). And at that time, petitioner clearly was aware of his right to appeal the denial of the motion for new trial.

Petitioner may, however, overcome procedural default by demonstrating his actual factual innocence. *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), cited *in Fernandez–Malave v. United States,* 502 F.Supp.2d at 239. A petitioner can avoid the procedural bar by demonstrating that it is "more likely than not that no reasonable juror would have convicted him in the light of new and reliable evidence of actual innocence." *Schlup v. Delo,* 513 U.S. at 327, 115 S.Ct. 851, cited in *Parrilla–Tirado v. United States,* 445 F.Supp.2d 199, 201 (D.P.R.2006). Similarly, in *Bousley v. United States,* 523 U.S. at 623, 118 S.Ct. 1604, 140 L.Ed.2d 828, the Supreme Court explained that, " '[t]o establish actual innocence, petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him'." *Lorentsen v. Hood,* 223 F.3d 950, 954 (9th Cir.2000). However, regardless of petitioner's attested protestations during and after trial, a jury has already found petitioner guilty beyond a reasonable doubt after considering the testimonies of three government agents versus the testimonies of the three defendants. Credibility was the deciding factor in the verdict. Were he ultimately to prevail in his belief that "primo" was changed to "kilo" to facilitate a conviction by subterfuge, this would not *a fortiori* lead to the conclusion that the evidence was weak, and that no reasonable jury would convict him. Rather it would make the government's case ever so slightly weaker, again considering the extensive and understand-

able use of code language under the circumstances.

The fact that there were competing translations of the audiotapes, at least three at this time, including petitioner's own translation, gives pause but the district court repeatedly gave cautionary instructions to the jury in relation to the audiotape being the evidence and not the transcript.[10] Petitioner denied that he stated the words "kilo" or "kilos" and had an innocent version for every cryptic word that the government agents testified to. For example, the government's proof reflected that payment for the 100 kilograms of cocaine would have been made in New York, referred to as "las torres" meaning the towers (Tr. T. Oct. 21, 2002, p. 64), whereas petitioner explained the use of that term as referring to the cases or the towers of the computers. (Tr. T. Oct. 23, 2002, p. 55).

7) Counsel was ineffective in failing to submit motions to raise Fourth Amendment allegations in support of its requests to suppress evidence, that is, Exhibits N1 and N2.

At trial, petitioner as well as the other two defendants objected to the use of transcripts of tapes N–1 and N–2. During the defense part of the trial, petitioner testified as to the lack of accuracy of the transcript of the audiotape where it is alleged that he used the word kilo or kilos, something he denied saying under oath.[11] He notes he filed several *pro se* motions and the record reflects this to the point that the district court admonished petitioner to stop the practice because he was represented by counsel, although the court granted some of the motions nevertheless. Here, co-defendant Campusano moved to

suppress several audio recordings, numbered N–1 through N–5 based on the grounds that N–1 and N–3 were illegally obtained, and that N–3, N–3A, N–4 and N–5 were inaudible. Petitioner joined in those motions. Defense counsel further objected to the report and recommendation of the United States magistrate judge which disfavored petitioner's position. That the district court adopted the report and recommendation does not lend support to a Sixth Amendment violation on the part of defense counsel.

Petitioner argues that cooperating individual Nelson Rodriguez had no authority to make consensually recorded conversations under the Foreign Intelligence Surveillance Act, the Fourth Amendment, 18 U.S.C. § 2511(2)(c) or 18 U.S.C. § 2518(1)(c). Nelson Rodriguez made these recordings beginning on July 5, 2001 when petitioner was in Miami and Rodriguez was in Puerto Rico. (Docket No. 1–3 at 113). Between July 9 and 11, 2001, Nelson Rodriguez recorded petitioner's conversations from different public phones in the Isla Verde sector of Carolina and from Plaza Carolina (or Carolina Plaza), a shopping mall. Petitioner argues that he was never shown any authorization for these calls and that there is no document signed before September 18, 2001 authorizing the recording of such conversations. He argues that this oversight is fatal under F.I.S.A. Petitioner notes that this case began in early 2000 in Bogota, Colombia when the tax and customs authorities seized 26 printers for lack of timely payment of taxes. (Docket No. 1–3 at 114).

The Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801–11 (F.I.S.A.) is inapplicable to the facts of this

---

10. See footnote 13.

11. Similarly, informant Rodriguez testified that he always used code words on the phone,

and would only talk about cocaine in code. (Tr. Oct. 22, 2002, p. 31).

case; the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et al.,* and specifically the Federal Wiretap Act do apply. F.I.S.A. establishes procedures for electronic surveillance for foreign intelligence purposes. *United States v. Johnson,* 952 F.2d 565, 571 (1st Cir. 1991), citing *United States v. Duggan,* 743 F.2d 59, 77 (2d Cir.1984). There is no hint of foreign intelligence monitoring or collection in this case. Rather, the investigation in this case is strictly limited to a law enforcement activity focused on the international trafficking of controlled substance, cocaine in particular. The electronic surveillance methods used in this case are provided for in 18 U.S.C. § 2511(2)(c) which permits interception of oral communications if consent is given to the same by at least one of the parties to the communication. *United States v. Bennett,* 538 F.Supp. 1045, 1047–48 (D.P.R.1982). Regardless of petitioner's showing of a possible administrative defect in the agency paperwork authorizing consensual interceptions (Docket No. 1–4), the statute requires only consent by a law enforcement agent or officer and such consent by the cooperating individual has been clearly established. (Docket No. 1–4 at 5). An interception of an oral or wire communication between a non-consenting party and a consenting party thus authorized is not illegal in the United States. *See United States v. Restrepo,* 890 F.Supp. 180, 202 (E.D.N.Y.1995); *United States v. Pérez,* 465 F.Supp. 1284, 1285 (D.P.R.1979). If the consent is established, there is no violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Nor is there a violation of any Fourth Amendment rights. *See United States v. White,* 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Thus, trial counsel does not render ineffective assistance by

failing to mount a Fourth Amendment attack on the consensual recordings based upon the argument that she failed to discover the details of the government's authorization of Rodriguez's conduct as an informant. The United States magistrate judge extensively addressed this matter in her report and recommendation. The conspiracy commenced in early July 2001 and the first recording was made on July 5, 2001. Petitioner was arrested on July 11, 2001. There is no information that Nelson Rodriguez had the intention to commit a crime or a tort in recording the communications with petitioner. Indeed, it appears that informant Rodriguez had been an informant in different cases since as early as 1985 and was therefore well-known to federal investigators, lending even less strength to any attack on his consent to intercept wire communications in which he is a participant. Consequently, trial testimony provided the foundation for what is a garden-variety law enforcement tool which does not invite a quixotic frontal attack.

Assuming, and only assuming, that trial counsel's representation fell below an objective standard of reasonableness, petitioner would still have to prove that representation resulted in prejudice to his case. *See Owens v. United States,* 483 F.3d at 63 (quoting *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052). As stated above, there must be a reasonable probability that but for counsel's actions, the result of the proceedings would have been different. *See Dugas v. Coplan,* 428 F.3d at 334 (quoting *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052).

Trial counsel joined in the motion to suppress tape-recordings filed by co-defendant Campusano. (Crim. No. 01–520, Docket No. 44). She filed or adopted other pretrial motions [12]. (Crim. No. 01–520,

---

**12.** All defendants at times adopted each oth- ers' motions. (Crim. No. 01–520, Docket

Docket Nos. 85 (grand jury records), 86 (Rule 404(b)), 89 (disclosure of witness statements), 90 (second motion for discovery related to government informants), 105 (return of property), 106 (join in co-defendants' motion to view and listen to original videos and audios), 112 (motion to sever), 152 (exclude expert testimony), 158 (exclude testimony of informant)). Counsel objected to the magistrate judge's report and recommendation denying the motion to suppress. (Crim. No. 01–520, Docket No. 75). She moved for judgment of acquittal after the government's case in chief on October 23, 2002, and on October 24, 2002 before the case was submitted to the jury. Petitioner's *pro se* motions which were stricken by the court were re-filed by counsel Plaza.

Aside from motions actually filed or adopted, trial counsel made an omnibus request on July 31, 2001 by letter to the United States Attorney, which request included Fed.R.Crim.P. 16 discovery, Rule 12(d)(2) (designation of evidence), exculpatory material, and Federal Rule of Evidence 404(b) material. (Crim. No. 01–520, Docket 152 (attachment), dated October 17, 2002). The request was made four days after arraignment. While petitioner stresses that motions for discovery were not filed in all instances, discovery is a matter between or among the parties which initially does not involve motion practice before the district court. *See* former Rule 408, Local Rules, Dist. of P.R., now Local Rule 116(b).

Petitioner objected to the presentence investigation report on September 19, 2006 through counsel Plaza. (Crim. No. 01–520, Docket No. 389). She raised issues which petitioner asked to raise in the objection, such as objection to the obstruction of justice and the drug quantity. The objection goes into great detail regarding the

Nos. 71, 78, 102, 106, 119, 135).

drug quantity computation and the lack of capability of petitioner to have undertaken such a transaction since he traveled from Colombia to Miami and had to borrow money to travel to Puerto Rico. Petitioner also raised the issue of his paranoid schizophrenia, one of the symptoms of which is illusions of grandeur. (Criminal No. 01–520, Docket No. 389 at 9). Petitioner again objected to the presentence investigation report through attorney Garcia, who focused on the 100 kilograms of cocaine and the lack of foundation for determining such an amount. (Crim. No. 01–520, Docket No. 445). The court overruled the objections in a written opinion which was translated in open court for petitioner on the date resentence was scheduled. *United States v. Pinillos*, 2007 WL 1341228 (D.P.R. May 3, 2007). The resentencing was rescheduled because petitioner had spoken to attorney Alexander Zeno (at least three times) to be his attorney, and refused to speak to court-appointed attorney Garcia at MDC.

## APPELLATE COUNSEL

Petitioner's arguments in relation to appellate counsel are addressed below.

1) Appellate counsel failed to raise the issue of prosecutorial misconduct.

2) Counsel failed to argue error in relation to the court's accepting tampered evidence after the U.S. Magistrate Judge had dismissed the same.

 Appellate counsel Gauthier is charged with having rendered ineffective assistance in failing to pursue prosecutorial misconduct and for ignoring the court's error in accepting tampered evidence after then United States magistrate judge Delgado–Colon had dismissed the same. (Docket No. 1–1 at 23, ¶ 2). As I mention

above and below, undeveloped argument are deemed waived and need not be considered. However, the nature of the conclusion that evidence has been tampered with is such a serious allegation that it cannot be addressed lightly, as appellate counsel informed petitioner in writing. The information submitted in the present motion to vacate goes well beyond the available record that counsel Gauthier had at his disposal. Therefore it is difficult to attribute a Sixth Amendment violation to inaction on appeal regarding a point which could not be fully developed because whatever information petitioner has now did not exist at that time. Again, any issue of irregularities in audiotapes was raised in the late motion for new trial filed prior to re-sentencing. Furthermore, aside from an issue he could not considered, appellate counsel had to choose among issues which he thought had promise over those which did not have hope of success.

3) Counsel failed to prevent a miscarriage of justice by not raising as sentencing error a three-point reduction which could have been awarded based upon U.S.S.G. § 2X1.1 (acts leading to the supposed transaction were never finished).

■ Petitioner has not developed this argument at all except to mention the sentencing guideline which he finds applicable. The short answer to this point is that the matter was not raised on appeal after re-sentencing where factors related to sentencing calculations were relevant. Nothing is mentioned regarding the applicability *vel non* of U.S.S.G. § 2X1.1 before this collateral attack. Because the issue was never raised at the district court level to begin with, and was not raised on appeal, the court may not consider the same. *Davis v. United States,* 417 U.S. at 342, 94 S.Ct. 2298. A cause and prejudice analysis need not be considered because there is no allegation of a Sixth Amendment violation against appellate counsel after re-sentencing. Ultimately, the argument that he should have received a three-level reduction because the criminal transaction was never finished is presented in a perfunctory manner with no real attempt at argumentation. I therefore deem the matter waived. *See Cody v. United States,* 249 F.3d 47, 53 n. 6 (1st Cir.2001).

4) Counsel did not make an analysis of audiotape N–2.

■ Petitioner argues that he sent several letters to appellate counsel requesting that they listen together to the compact discs and audiotapes since they were tainted and edited. No issues related to the tapes were submitted for appellate review although both trial and appellate counsel, as well as the district court and court of appeals were queried about the copies of discovery by the Colombian consul in New York. Petitioner argues that the nine audiotapes provided in the first discovery package have disappeared. (Docket No. 1 at 8). He also notes that the violations of the Fourth Amendment and the illegality of the tape recordings were not argued on appeal by attorney Gauthier.

■ Defendants have a right to effective assistance of counsel on appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), cited in *Brown v. United States,* 42 F.Supp.2d at 127. This does not mean that they have to raise every issue that an appellant directs them to file. Indeed, "appellate counsel who filed a merit brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), cited in *Wyman v. United States,* 62 Fed.Appx. 364, 366 (1st Cir.2003).

Under the plain error standard, the court may reverse a conviction only if (1) an error has occurred, (2) the error was clear and obvious, (3) it affected the defendant's substantial rights, and (4) it seriously impaired the fairness, integrity, or public reputation of the proceedings. *United States v. Aviles–Colon,* 536 F.3d 1, 14 (1st Cir.2008), citing *United States v. Perez–Ruiz,* 353 F.3d 1, 9 (1st Cir.2003); *see United States v. Colon–Diaz,* 521 F.3d 29, 33 (1st Cir.2008). But clearly, a review of this record does not support a finding that plain error was committed in relation to the evidence of guilt or the determination of the final sentence. For example, the court correctly decided the motion to suppress, and because that ruling is correct, petitioner cannot demonstrate that he suffered prejudice as the result of any poor or inadequate performance on the part of his attorney. *See e.g. United States v. Carrigan,* 724 F.3d 39, 43–44 (1st Cir.2013). As to the possible irregularities of the audiotapes themselves, the record supports only the issue of audibility but not authenticity. Appellate counsel reasonably saw no issue of tampering with audiotapes in the trial record. None of the trial attorneys raised such an issue and the tapes disfavored all of them. It was not error for appellate counsel to decide against raising the raw argument of tampering and then charging a long list of assistant United States attorney with tampering with evidence when there was no evidence of tampering.

## CONCLUSION

I find that petitioner has failed to establish that his trial counsel's representation fell below an objective standard of reasonableness. *See Lafler v. Cooper,* 566 U.S. ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012); *Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *Moreno–Espada v. United States,* 666 F.3d 60, 65 (1st Cir.2012); *United States*

*v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). But assuming that petitioner has succeeded in showing deficiencies in his legal representation at trial, he is unable to establish that said deficiencies resulted in prejudice against him in the criminal proceedings. *See Owens v. United States,* 483 F.3d at 63 (quoting *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052). It is impossible to find that claimed error has produced " 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States,* 37 F.3d at 772 (quoting *Hill v. United States,* 368 U.S. at 428, 82 S.Ct. 468). Similarly, considering the amount and type of evidence facing petitioner, it is difficult to find that ". . . counsel's conduct so undermined the proper functioning of the adversarial process that the trial [could not] be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. 2052, quoted in *Lafler v. Cooper,* 132 S.Ct. at 1388. Had the transcript never reflected "kilo" or "kilos" and were unintelligible in that respect, the evidence against the three defendants considering the credibility of the government witnesses and the code language described by them was more credible than the versions of both other defendants as well as petitioner's version (which included the participation of a gardener and a carwash operator) of what occurred in the vicinity of the negotiations. Adding to the lack of credibility was the fact that neither co-defendant knew anything about computers. *United States v. Pinillos–Prieto,* 419 F.3d at 68 n. 6; (Tr. T. Oct. 23, 2002, pp. 107, 187).

I make a similar finding as to appellate counsel who raised meritorious issues and prevailed on one of them. Petitioner has drawn the court's attention to a fusillade

of trial, sentencing, and appellate counsel errors to the point that an uninformed reader might decide that he went unrepresented at trial, at sentencing, at re-sentencing and on his first appeal, since there are no complaints directed to second appellate counsel. The case hinged on credibility determinations buttressed by electronic surveillance and testimony related to the used of code words. Issues raised by petitioner have for the most part been raised by defense counsel at trial or by petitioner *pro se,* such as in his late motion for new trial filed on August 10, 2007 (Crim. No. 01–520, Docket No. 451). Also, mixed along with accurate representations, petitioner has made several statements which are patently incorrect as reflected in the docket and correspondence with defense counsel and correspondence between the United States Attorney's Office and defense counsel. But particularly the sentencing issues related to substantial assistance, mental state, and minor role participation are totally undeveloped or the product of an extended non-sequitur related to the decision-making process based upon Nolgie Rodriguez–Zamot criminal conviction record. It is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Nikijuluw v. Gonzales,* 427 F.3d 115, 120 n. 3 (1st Cir.2005); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990); *Casas v. United States,* 576 F.Supp.2d 226, 234 (D.P.R.2008); *Vega–Figueroa v. United States,* 206 F.R.D. 524, 524 (D.P.R. 2002). Petitioner offers no legal support for much of his raw argument. *See e.g. Barreto–Barreto v. United States,* 551 F.3d 95, 99 (1st Cir.2008). This is particularly true as to the argument that a number of federal prosecutors tampered with evidence to secure his conviction. The poor quality of the recordings and discrepancies in the transcripts do not lead to a finding of prosecutorial skullduggery. This argument is at best conclusory.

Counsel selected issues that were to arise at trial and moved in limine and for disclosure accordingly. Trial counsel might have decided to focus on impeachment of the three government witnesses to create doubt. It is clear that the government did not make a 48–month plea offer to petitioner and that, notwithstanding discussions with the government, the last offer made in late September 2002 was not satisfactory to petitioner.

Appellate counsel chose the issues to be raised on appeal and it is difficult to find ineffective assistance in his not choosing to argue certain issues that might have been chosen by another attorney, just as it would be wrong to judge him ineffective because the conviction was affirmed. In any event, even *Strickland* does not guarantee perfect representation but only a reasonably competent attorney. *See Harrington v. Richter,* 562 U.S. 86, 131 S.Ct. 770, 791, 178 L.Ed.2d 624 (2011). My reading of the entire trial transcript, of the numerous motions filed or adopted by defense counsel, as well as objections to unfavorable rulings, and the objections by all trial counsel to the admission of audiotape Exhibit 8(N–2) (Tr. T. Oct. 21,2002, p. 76–77), lead me to the conclusion that the performance of counsel at all levels was not inadequate in accordance with the objective standard of the Sixth Amendment. That petitioner and other defendants ultimately failed in their attack on the evidence and the translation of N–2 in particular cannot be attributed to the poor performance of counsel. All of the attorneys in this case attacked the government's use of audiotape numbered N–2 as well as the translations, and also attacked and questioned the tape in terms of its accuracy and audibility, as well as its legal foundation based upon the authority of

the cooperating individual creating the same. Petitioner told the court at re-sentencing that he himself had never been able to listen to audiotape N–2 and that the Colombian consul never heard the word "kilo" in the tape, emphasizing again that the word "kilo" is confused with the word "primo" or cousin. (Tr. Re-sentencing hearing Aug. 13, 2007, p. 8)(Criminal No. 01–520, Docket No. 509). No doubt, had the tape transcripts been available sooner, the problem of accuracy would have been considered and resolved before trial and there would never be an issue of authenticity. Transcripts are generally prepared, or at least, were generally prepared by the United States Attorney's Office once it was clear that a defendant would not be pleading guilty, thus necessitating a late production of transcripts as aids. *See e.g. United States v. Morales–*

*Madera,* 352 F.3d 1, 10 n. 8 (1st Cir.2003). However, the court gave numerous curative instructions to the jury, reminding them that the transcripts were aids but that the actual tape was the evidence.[13] The arguments related to poor quality tapes, inaccurate transcripts, entirety of tape N–2 not being played at trial, and Fourth Amendment violations were presented to the court and were decided against petitioner, through no fault of his trial and re-sentencing counsel.[14] Indeed, the judge concluded the instructions to the jury with an instruction related to the transcripts of the audio recordings.[15] And although similar instructions were given during the trial, all defense counsel sought that the jury be instructed in the final set of instructions prior to deliberations related to the audiotape transcripts. Again, since there was no error commit-

---

**13.** Illustrative of the court's clear awareness of the weight and consideration of transcripts of translations is the following statement by the court referring to the transcript related to Exhibit 7, N–1 when the prosecutor, Nathan Shulte, moved it into evidence: "Well, I'm not moving transcripts into evidence. The Court keeps a full set of transcripts but true to the Court's instructions, the transcripts are not evidence, although they are needed on appeal, ..." ... "The jury is instructed the transcripts are not evidence. The evidence is the spoken words that were recorded." (Tr. T. Oct. 21, 2002, p. 60).

Similarly, the Court shortly later noted: "Ladies and gentlemen, don't read the transcript until you're hearing the recording. Because that's not the evidence. The evidence is what you listen, not what you read. (Tr. T. Oct. 21, 2002, p. 64). Further, referring to an interpreter's notes on a transcript, the Court stated: "... There's no need for that. I have told the jury and I keep insisting that this is not evidence. This is only an aid —." (Tr. T. Oct. 22, 2002, p. 48).

**14.** Defense counsel Plaza focused on N–2 audiotape at one point during her closing argument. "The tapes that you will have, the audiotapes, you're going to hear them. You

will be allowed to. And you will hear, if you look through those audiotapes, there's nothing there about cocaine, drugs nor even kilos. I will submit to you if you go back to Call Number 7 on Tape N–2, you will hear ... [objection overruled] ... I urge you to listen to that tape, and you will see—you will hear ... that there were never mentioned the words kilo, cocaine, drugs. Never." (Tr. T. Oct. 24, 2002, p. 50).

**15.** The Court "... You will receive the exhibits. Along with the exhibits and the Indictment which I told you is not evidence, you will also receive the transcripts of the audio recordings, of the cassettes. Now as you know, I told you during the trial that the transcript is an aid. It's an aid to help you better understand what was spoken in the recorded conversations. But what is evidence is the recorded conversations, what you hear in the recording, not what you read. So if there is any discrepancy between what you hear in the conversation recorded and what you read in the transcript, which is only an aid to assist you to better follow a conversation, remember that it is what you hear spoken in the recorded conversation that is evidence, not what is in the transcript; is that understood?" (Tr. T. Oct. 24, 2002, p. 118–19).

ted by the court in the treatment of the audiotape transcripts and the numerous cautionary instructions, there is no ensuing prejudice suffered under *Strickland.* *See e.g. United States v. Collazo,* 732 F.2d 1200, 1203–04 (4th Cir.1984). Finally, any issue of authenticity of the recordings did not arise until 2006, and petitioner was clearly aware that the motion for new trial would probably be denied, and was also aware that its denial could be appealed.

■ "Under *Strickland v. Washington,* ... counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States,* 195 F.3d 54, 55 (1st Cir. 1999); *Perocier–Morales v. United States,* 887 F.Supp.2d 399, 418 (D.P.R.2012). Neither defense counsel nor appellate counsel can hardly be called incompetent considering their performances as reflected in this record. Just as in the professional judgment of attorney Lehman, the denial of the motion for new trial was a non-issue, so the matters of prosecutorial misconduct, evidence tampering and tape audibility were reasonably considered non-issues in the judgment of counsel Gauthier when considered with other issues he raised on appeal. Petitioner has not satisfied either prong of *Strickland.* Accordingly, it is my recommendation that petitioner's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. Fed.R.Civ.P. 72(b)(2); *see Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. DeJesus–Viera,* 655 F.3d 52, 57 n. 1 (1st Cir.2011); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Velazquez v. Abbott Laboratories,* 901 F.Supp.2d 279, 288 (D.P.R.2012).

In San Juan Puerto Rico this 29th day of July, 2013.